CASE No. 1111.

## BOLT v. DAWKINS.

1. Where the right of action accrued before the adoption of the Code of Procedure, the Statute of Limitations then of force governs the case.

2. Where the right of action accrued during the life-time of the debtor, the currency of the Statute of Limitations, as to such demand, is not suspended after his death, during the time when there is no administration upon his estate.

3. Admissions and promises of intestate's heirs, who, without letters of administration, were managing his estate, do not continue or revive the indebtedness of the intestate; and a judgment obtained against such persons, as executors *de son tort*, cannot have the effect of arresting the operation of the Statute of Limitations.

4. Where the administrator brings an action for the sale of the real estate of his intestate in aid of assets, the personalty being inconsiderable, the court will sustain his plea of the Statute of Limitations to a claim barred thereby, notwithstanding the heirs-at-law have admitted the claim to be justly due and oppose the interposition of the plea. The Court of Equity is bound to apply the bar of the statute to a legal demand in the same manner as a Court of Equity would apply it.

5. If the administrator, in his complaint, after the bar of the statute was complete, had, in the most unqualified manner, acknowledged a debt of his intestate and promised to pay it, such admission and promise would not revive the original debt, or create a new debt against the estate, nor would they estop the administrator from afterwards pleading the statute as a bar.

6. The administrator is the proper person to interpose this plea, and it matters not if creditors and distributees have not joined with him in such defense.

7. Whether one security operates as payment of another is a question of fact dependent upon the intention of the parties.

8. A promissory note was received in exchange for a sealed note, past due, of larger amount, and the latter was canceled and surrendered to the maker, and, it being found among his papers after his death, was delivered by his son to the payee. *Held*, that the sealed note was not a subsisting obligation.

9. Where a note for an amount less than the sum due is received in payment of a debt after maturity, the debt is extinguished.

10. A promissory note may extinguish a higher security, as, for instance, a sealed note.

Before WALLACE, J., Union, April, 1880.

Action by Charles Bolt, as administrator of the estate of Joshua P. Dawkins, deceased, against Sarah A. Dawkins (widow), B. F. Dawkins and Nannie E. Tench (children), and Sarah A. Stringfellow and others, creditors of Joshua P. Dawkins' estate. The action was commenced January 10th, 1878, and was in the nature of a bill for sale of land in aid of assets, the personalty received by the administrator not exceeding $200. The complaint alleged "that the indebtedness of said estate is very large; that the personal estate is wholly insufficient to satisfy the same, and that it will be necessary to sell the lands in order to pay and discharge the debts." And again, "That the defendants *. '* * and Sarah A. Stringfellow * * * are creditors of said intestate, and there are none others."

An order was passed directing the sale of the intestate's lands, and appointing Joseph F. Gist, referee, to call in creditors, and take proof of claims. The lands were sold in January, 1879, for $12,535, exclusive of one tract sold at private sale, by order of the court, for $5,500, on credit, secured by bond and mortgage.

The referee, by his report, filed April 14th, 1880, disallowed the claim of James B. Dawkins (as having been fully paid), the claim of Mrs. Stringfellow and of one other (because barred by the Statute of Limitations). The note held by Mrs. Stringfellow was made in Florida, where both she and J. B. Dawkins resided. The facts connected with these two claims are fully stated in the opinion. The only 'claims against the estate, allowed by the referee, were those of Lyons, administrator, for $301.57, assignees of Choice for $2,782, and S. F. Dawkins for $435.48, making the aggregate indebtedness of the estate on April 14th, 1880, $3,519.05.

During the progress of the reference, the following paper was filed with the referee:

CHARLES BOLT, adm'r, *v.* SARAH DAWKINS and others.

I, Sarah A. Stringfellow, a defendant in the above-stated case, do hereby authorize and empower Messrs. Steedman and Rawls, my attorneys herein, to file with the record, and to enter upon the proceedings, my consent and agreement that all claims that may herein be established against the estate of Joshua P. Daw-

kins, deceased, whether simple contract or specialty debts, and all expenses of administration, and all costs in this case, shall take precedence in the marshaling of said estate, and in the administration thereof, of the claim against said estate presented in my favor, viz., promissory note of J. P. Dawkins in favor of J. B. Dawkins for $5,200, transferred to and now owned and held by me, and the judgment thereon obtained by me against John W. Tench and B. F. Dawkins, as executors of J. P. Dawkins, deceased, so that no part of said estate shall be applied to the payment of said claim until all other demands against the said estate shall have been fully satisfied.

April 4th, 1879.　　　　　Sarah A. Stringfellow.

I also consent to the above.

James B. Dawkins. ·

By virtue of the within authority, we do hereby enter consent of Mrs. S. A. Stringfellow that the debts of and demands against the estate of J. P. Dawkins, deceased, within referred to, shall take precedence in the administration of said estate over the demand and debt set up by me.

Steedman & Rawls,

April 7th, 1880.　　　　*Attorneys for Mrs. Stringfellow.*

There were several judgments proven against B. F. Dawkins, Mrs. Tench and Mrs. S. A. Dawkins, who were distributees of the intestate, upon their personal indebtedness.

Upon the note held by Mrs. Stringfellow, there was a payment of $1,000 on January 7th, 1875, "by sight draft of Tench and Dawkins on L. D. Mowry & Son." This draft was paid, and Tench testified that Mr. L. D. Mowry knew that it was a payment on this note. Mrs. Stringfellow obtained judgment by default on this note in October, 1877, against John W. Tench and B. F. Dawkins, as executors of J. P. Dawkins, deceased.

Assignees of William Choice and S. F. Dawkins, and the judgment creditors of the distributees desired the statute to be pleaded to Mrs. Stringfellow's claim; Lyons, administrator, and the distributees, did not so desire. Other facts are stated in the opinion.

The Circuit decree was as follows:

This proceeding is instituted by the plaintiff for the purpose of having the land of J. P. Dawkins sold in aid of assets to

pay debts. By an order of court, creditors of J. P. Dawkins were called on to prove their demands, and Mrs. Stringfellow offers as proof of her debt the judgment obtained by her against Tench and Dawkins. Is this proof against the administrator here? After some hesitation it has been held in this State that judgments against administrators would bind the lands of intestates, but not that a judgment against an executor *de son tort* would so bind. On the contrary, such executors are held to be mere trespassers, as there can be no privity between such trespassers and subsequent personal representatives; nor are heirs in any way affected by a judgment against executors *de son tort;* nor is the estate itself bound by such a judgment beyond the assets that went into the hands of such executors. He is a trespasser, and the measure of his liability is the assets that went into his hands if he properly pleads to the action. If he does not plead at all to the action, the judgment is against assets in his hands, and for the balance against him personally. The fact that Tench and B. F. Dawkins were in possession of the land cannot alter or enlarge the effect of the judgment. Tench was husband of one of the heirs; B. F. Dawkins was himself one of the heirs, and Mrs. S. A. Dawkins the other heir. These were all in possession of the land, and rightfully and legally so; and their possession will be referred, of course, to their legal right. In no sense, therefore, did they hold the land as executors *de son tort.* A judgment against them as such, therefore, could not bind the land. I am of the opinion, therefore, that Mrs. Stringfellow's judgment cannot rank as a judgment against any part of the estate of J. P. Dawkins, except what Tench and Dawkins took into their possession wrongfully, and is not proof of Mrs. Stringfellow's claim in this action. To the note upon which the judgment is founded the plaintiff interposes the plea of the Statute of Limitations. As to the right of the administrator to interpose the plea I think there can be no doubt. He is the personal representative of the maker, and as to the right to plead the statute, he stands in his place. A case might occur in which the court would compel him to plead the statute, but it is hardly possible to conceive a case in which the court would strike out such a plea, or prevent its interposition, or dis-

regard it when there were facts to support it. The note is dated February 1st, 1870, and is payable one day after date.

This action was commenced in 1877, more than seven years after the maturity of the note, and more than sufficient to bar the right of action on the note if the statute was running all that time. The maker died on August 8th, 1870. Certainly the holder had his right of action after the maturity of the note and before the death of the maker. The statute then began to run before the death of the maker. It can be collected from several of our cases that when the right to sue was perfect the currency of the statute is not arrested by the death of the maker. Where the right to sue is not perfect before the death of the maker, the statute does not begin to run until there is somebody to sue. *Nicks* v. *Martindale, Harp.* 135; *McCollough* v. *Speed,* 3 *McCord* 255; *Moses* v. *Jones,* 2 *Nott & M.* 259. Some of the heirs promised to pay the note within the time necessary to save the bar of the statute, and a payment was made on the note by Tench and Dawkins. For the same reasons that the judgment against Tench and Dawkins does not bind the estate, a payment upon the note by them would not prevent the running of the statute in favor of the estate. Neither would a promise by Tench and Dawkins have any more effect than the payment of a part of the debt. The promise of an heir to pay the debt of the ancestor is a promise to pay the debt of another, for in this case it is not the debt of the heir. Under certain circumstances, property of the ancestor in the hands of the heir can be made available to pay the debt of the ancestor, but it is still the debt of the ancestor to which the administrator has the legal right to plead the statute, and such plea cannot be defeated by proof of the promise of the heir to pay the debt. It might be that the heir himself, if the promise was made upon sufficient consideration, would be bound, but not the personal representative of the estate.

I am constrained, therefore, to hold that Mrs. Stringfellow's claim against the estate is barred.

James B. Dawkins held a sealed note on J. P. Dawkins for $8,100, and dated October 11th, 1869, payable one day after date. The note transferred by J. B. Dawkins to Mrs. String-

fellow, previously referred to, was given for this note. The Stringfellow note was for $5,200. It is claimed by James B. Dawkins that the sealed note for $8,100 is not extinguished by the promissory note of $5,200.

It is a familiar rule that a note is not paid by the acceptance of a smaller sum than the amount due upon the note in payment. The rule does not apply to cases where something other than money is received in satisfaction. In such cases the effect of the transaction is to be determined by the intention of the parties. In this case a promissory negotiable note was given and received for a sealed note, at the instance and request of the holder. The larger and sealed note was delivered to obligor— the words "canceled by another note, J. B. Dawkins," written across its face, with lines of cancellation across the face and signature. The negotiable note transferred by J. B. Dawkins to Mrs. Stringfellow as a collateral is now held by her. A letter is produced in evidence from J. B. Dawkins to J. P. Dawkins, bearing date November 14th, 1869, before the exchange of notes, proposing to take a note for a smaller amount, and in which, among other things, he says he cannot reconcile it to his feelings to exact that amount, referring to the larger note. All these facts satisfy me that it was the intention of the parties that the smaller note should operate as payment and extinguishment of the larger note, and that the larger note is extinguished. I need not, then, in this case discuss the question whether or not the acceptance of a negotiable note in payment of a sealed unnegotiable note for a larger amount would operate an extinguishment of the larger note.

The last exception of Mrs. Stringfellow relates to the basis upon which the calculation was made on the note held against J. P. Dawkins by W. Choice and assigned to Mowry. I am of the opinion that the referee properly admitted proof of the note, notwithstanding judgment had been recovered upon it against the executor *de son tort.*

All exceptions to the report of the referee are overruled and the report confirmed.

*It is ordered and decreed,* that funds in the hands of the clerk of this court, and such funds as may be hereafter realized from

securities in his hands belonging to the estate of J. P. Dawkins, be paid first to the costs of this action; next, to the debts of the intestate as ascertained and allowed by the referee; next, to the mortgage debt of L. D. Mowry & Son, and, if there be any residue after these payments, that such residue be held by the clerk until the further order of this court.

The defendant, Sarah A. Stringfellow, gave notice of appeal from this decree upon the following grounds:

1. Because his Honor decides that a judgment obtained against an heir in possession of the land of an intestate, in a suit brought against the heir, as executor, does not bind the land, it appearing that the heir is also executor *de son tort.*

2. Because his Honor decides that such a judgment does not affect heirs or subsequent personal representatives, or the estate of the intestate.

3. Because his Honor should have decided that, as J. W. Tench and B. F. Dawkins represented and managed the estate of J. P. Dawkins by the consent and acquiescence of all the heirs and creditors of the said J. P. Dawkins, the judgment of Mrs. S. A. Stringfellow, fairly obtained against them as executors, found the real estate in their possession and managed by them, so far as heirs, creditors and subsequent personal representatives are interested therein.

4. Because his Honor should have decided that the administrator, in seeking the aid of this court to reach the real estate of J. P. Dawkins, deceased, in aid of assets, must do equity, and will not be permitted, by pleading the Statute of Limitations, to defeat the just claim of Mrs. S. A. Stringfellow, which had been continually assented to and recognized as a subsisting debt of the estate by all parties interested in the same.

5. Because his Honor should have decided that, as the heirs of J. P. Dawkins refused to plead the Statute of Limitations, and all the creditors of J. P. Dawkins and others interested in his estate were protected by the agreement of Mrs. S. A. Stringfellow to give precedence to all other claims against said estate over her own, the administrator will not be permitted to plead the bar of the Statute of Limitations to defeat a just claim, con-

tinually recognized by all interested in the estate since the death of J. P. Dawkins.

6. Because his Honor should have decided that the administrator of J. P. Dawkins, deceased, was equitably estopped from pleading the bar of the Statute of Limitations to the claim of Mrs. S. A. Stringfellow.

7. Because his Honor decided that the Statute of Limitations continued to run after the death of J. P. Dawkins, and was not arrested thereby until letters of administration were granted in respect to a debt owned and held by parties living "beyond seas."

8. Because his Honor should have decided that J. W. Tench and B. F. Dawkins were the agents of all parties interested in the estate of J. P. Dawkins and of the estate itself, and their continual recognition of the debt in question, and their promises to pay the same, arrested the Statute of Limitations and prevented it from barring the debt.

9. Because his Honor should have decided that the payment made in behalf of the estate upon the claim of Mrs. S. A. Stringfellow, by parties rightfully in possession of the estate and legally representing the intestate, made with the knowledge and assent of all parties interested in the estate, arrested the Statute of Limitations from running in their favor.

10. Because his Honor should have decided that the payment made in behalf of the estate upon the claim held by Mrs. Stringfellow, by an heir of the intestate in possession of the estate, there being no administrator or other representative of the estate, arrested the Statute of Limitations.

11. Because his Honor should have decided that the promises and payments of the heirs in possession of the land of the intestate prevented the bar of the Statute of Limitations from arising in respect to the land against the claim of Mrs. S. A. Stringfellow.

12. Because his Honor should have decided that Mrs. S. A. Stringfellow was entitled to establish her claim against the estate of Joshua P. Dawkins by producing the sealed note of Joshua P. Dawkins given as evidence of the debt, which sealed note has not been paid.

13. Because his Honor should have decided that, as L. D. Mowry & Son took a mortgage upon the land in question, with notice of Mrs. Stringfellow's claim, their lien should be postponed to hers.

14. Because his Honor should have decided that, as the debt established against the estate of J. P. Dawkins by L. D. Mowry & Son was held by them as cumulative collateral security for the payment of the debt represented by the bond and mortgage of. S. A. Dawkins, B. F. Dawkins, N. E. Tench and J. W. Tench, any payment made upon the said debt from the estate of J. P. Dawkins will discharge the same *pro tanto;* and his Honor has erred in directing the debt established by said creditors against said estate to be paid from the fund in court, and, *also,* the bond and mortgage referred to, instead of directing the amount received by said creditors from said estate to be applied as a credit upon the bond and mortgage debt.

The defendant, James B. Dawkins, appealed from this decree upon the grounds:

1. For that his Honor, Judge Wallace, overruled the exceptions of this defendant to the referee's report.

2. For that his Honor, Judge Wallace, held that the promissory note for $5,200 acted as payment and extinguishment of the sealed note for $8,100.

*Mr. J. B. Steedman,* for Mrs. Stringfellow.

Did the admissions, promises and payment of the heirs, in possession of the land, sustain the subsisting legal obligation of the debt and prevent the bar of the statute as to the real estate of the intestate? If so, the note was not barred. 3 *Strobh. Eq.* 43; 9 *S. C.* 430. The personal property is not before the court to be administered. The heirs are sued on their ancestor's debt. 9 *S. C.* 436. Lands descended are assets, but, in general, the cause of action must be established against the heir. *Spears Eq.* 250; 2 *Hill Ch.* 257; *Rice Ch.* 387; 1 *S. C.* 198; 1 *Hill* 579; 4 *McC.* 131; 6 *S. C.* 156. The creditor has an immediate right of action against the heir, and is not bound first to exhaust his remedy against the personal representative. 2 *S. C.* 145. His

remedy does not depend on coöperation of administrator; he has an independent equity.  11 *S. C.* 582.  In equity, the executor is a necessary party only for the protection of the heir.  *Id.;* 2 *Hill Ch.* 260; *Rice Ch.* 239; 2 *S. C.* 140; 4 *Id.* 296.  Action will be sustained against him alone unless he object.  9 *S. C.* 436; 12 *Id.* 9; see, too, 1 *Desaus.* \*427; 1 *McC. Ch.* 325; *Spears Eq.* 250; 6 *S. C.* 66.  Administrator does not represent intestate as to real estate; only as to the personalty.  1 *Rice Dig.* 315, No. 24; *Spears Eq.* 401; 3 *Rich. Eq.* 91, 95; 4 *Desaus.* \*325; 13 *Rich. Eq.* 29; 13 *S. C.* 326; *Cheves Eq.* 27; *Rice Ch.* 19.  See his oath and bond.  *Gen. Stat.*, Chap. LXXXVIII., § 4.  His sureties are not liable for rent.  1 *McM.* 249.  His admission does not bind real assets in the hands of the heir or devisee, or affect their right to plead the statute.  6 *Johns. Ch.* 373; 3 *Russ.* 188; 12 *Eng. L. & Eq.* 191; 18 *Eng. Ch.* 257; 1 *S. C.* 195.  The heir is, therefore, the organ through which real assets are generally to be reached, and the administrator the organ through which personal assets are to be reached.  The acknowledgment of the heir should, therefore, continue the liability of the real estate to the payment of the debt.  Heirs in possession are trustees for the benefit of creditors.  6 *S. C.* 156; 9 *Id.* 436.  It is this equity, and the statute 5 Geo. II., Ch. VII., and the insufficiency of personal assets, which give the creditor the right to come directly against the heirs.  2 *S. C.* 145; 4 *Kent* \*420; 16 *Pet.* \*63.  It would seem, therefore, that as the admission of the administrator before action barred, prevents the bar of the statute as to personalty (*Bailey Eq.* 311), so the admission of the heir would prevent the bar as to the lands.  In neither case should the promise or admission of the one bind the property represented by the other.  Tench and Dawkins, under the agreement with intestate, were trustees for creditors.  14 *S. C.* 211.  And were agents for the heirs.  10 *Rich.* 332; *Story Cont.*, § 131.  The heirs, here, all admit the debt and refuse to plead the statute.  *Ang. Lim.*, § 7.

Equity being invoked, will the court lend its aid except on fair terms?  The administrator has only an equity.  1 *Story Eq.*, § 551, note 2.  And the court will require him to do equity.  *Id.*, § 557.  The plaintiff, here, is clerk of the court, and its

mere hand. 14 *Rich.* 156. And the court has undertaken the administration. 10 *Rich. Eq.* 439. And should protect the rights of all parties. 4 *Rich. Eq.* 491; 1 *Story Eq.*, §§ 64, 553. The heirs, here, could not plead the statute, therefore the administrator should not be allowed to do so in this action. The administrator's promises could not prejudice the heir; he should not be allowed to interfere to the prejudice of the creditor.

The Court of Equity will sometimes refuse to allow the statute to be pleaded. 1 *Eq. Cas. Ab.* 305; 2 *Williams Ex.* *1283, *1454; 2 *Hill Ch.* 91; *Rich. Eq. Cas.* 261; 3 *Barr.* 161. After their demands are satisfied, creditors are strangers.

The allegations of the complaint, and the use of Mrs. String-fellow's claim to procure a sale, should estop plaintiff from afterwards pleading the statute. 2 *Q. B.* 117; 6 *Jur.* 389; 12 *Q. B.* 925; 8 *Rich.* 117; 10 *Rich.* 338; 6 *S. C.* 46. The administrator alone has pleaded the statute. The only persons interested in sustaining the plea are creditors of the heirs; the heirs cannot set it up, nor can their creditors. 22 *Beav.* 1; 2 *Jur. N. S.* 602. The court here should not permit the plea. 4 *Strobh. Eq.* 196; 1 *McC. Ch.* 174; 4 *McC.* 424; *Harp.* 205. The intestate here created a trust for his creditors, and the trustees admitted the debt. *Ram Assets*, Ch. XXXIV., § 7.

*Mr. J. H. Rion,* for J. B. Dawkins.

*Messrs. Munro & Munro* and *S. Lord, Jr.,* for the administrator.

November 16th, 1881. The opinion of the court was delivered by

McIVER, A. J. Some time in August, 1870, J. P. Dawkins died intestate, possessed of a small personal but a very considerable real estate, leaving as his heirs-at-law, his widow, Sarah A., and his two children, B. F. Dawkins and Nannie E. Tench, the wife of John W. Tench.

It seems that, during the latter part of his life, the intestate had turned over the management of his property to his son, B. F. Dawkins, and his son-at-law, John W. Tench, and that after

his death they continued the management and control of the same without taking out letters of administration—their purpose, as expressed by them, being to pay up the debts of the intestate, provide for the support of the widow, and divide the estate between them, in pursuance of the "verbal will," as they termed it, of the said J. P. Dawkins. These expectations were, however, never realized, and, on the contrary, Tench and Dawkins not only failed to pay the debts of the intestate, but contracted a large liability to the defendants, Mowry & Son, principally for advances made to them to carry on the planting operations which they undertook to carry on with the property of the estate and to pay debts due by the intestate. To secure this liability to Mowry & Son, all the heirs of J. P. Dawkins, on April 13th, 1875, united in a bond, secured by a mortgage of the real estate left by the intestate, duly recorded, to the said Mowry & Son, who, as a further security, took an assignment of a judgment which one William Choice had recovered against Tench and Dawkins, as executors of J. P. Dawkins, on a note under seal given by the intestate to said Choice, the said Mowry & Son having furnished the money to pay Choice the amount due to him.

Subsequently, to wit, on October 6th, 1877, the plaintiff, who was clerk of the court, upon the demand of some of the creditors of J. P. Dawkins, obtained letters of administration on his estate, and on January 10th, 1878, commenced this action in the nature of a creditor's bill. The creditors were called in to prove their demands before a referee appointed for that purpose, and various claims were presented; but it is only necessary to direct our attention to two of these claims—one presented by Mrs. Sarah A. Stringfellow, and the other by James B. Dawkins, as the questions presented by this appeal arise out of these claims.

The Stringfellow claim was in the form of a promissory note of the intestate, payable to James B. Dawkins, or bearer, for $5,200, dated February 1st, 1870, payable one day after date, and transferred to Mrs. Stringfellow by James B. Dawkins on February 12th, 1872, as collateral security for a debt due by him to her. The claim of James B. Dawkins was in the form of a note under seal, executed by the intestate to said James B.

Dawkins on October 11th, 1869, payable one day after date, for the sum of $8,100. On February 1st, 1870, James B. Dawkins voluntarily accepted the above-mentioned promissory note for this note under seal, and, at the same time, canceled the sealed note by pen and ink marks drawn across the face of the note and the signature, and by the words "canceled by another note, (signed) J. B. Dawkins," written across its face, and delivered the same to the intestate, among whose papers it was found after his death and delivered to the attorney of James B. Dawkins by B. F. Dawkins after this action was commenced.

To the Stringfellow note, the Statute of Limitations was pleaded by the plaintiff, and to the sealed note for $8,100 the plea of payment and satisfaction was interposed. Both of these pleas were sustained by the referee, and, upon exceptions to his report, the Circuit judge overruled the exceptions and confirmed the report of the referee. From his judgment this appeal comes up, by which the questions raised are: 1. Whether the Stringfellow note is barred by the Statute of Limitations. 2. Whether the sealed note presented by James B. Dawkins has been paid or satisfied. The Stringfellow note became payable on February 5th, 1870, so that, allowing five instead of four years on account of the payee and holder being "beyond seas," and adding thereto the nine months allowed by the act of 1789, the bar would have been complete on November 5th, 1875, unless something had occurred to arrest the operation of the statute. It will be observed that, inasmuch as the right of action upon this note had accrued before the adoption of the Code of Procedure, the question must be determined by the old law and cannot be affected by the provisions of Section 125 of the code. *Bratton* v. *Guy,* 12 *S. C.* 42.

Under the law as it stood prior to the code, there can be no doubt that, as the right of action had accrued during the lifetime of the maker of the note, the currency of the statute was not suspended during the time that there was no administration upon his estate. *Nicks* v. *Martindale, Harp.* 135; *McCollough* v. *Speed,* 3 *McC.* 255; *Bugg* v. *Summer,* 1 *McM.* 333.

It is contended that the bar of the statute is prevented: 1. By the admissions, promises and payment made by the heirs of

the intestate while in possession of his land. Under the view which we take of this matter it will not be necessary to inquire particularly when these admissions, promises and payment were made, because, even if made before the statutory bar was complete, we do not think they could have the effect of reviving or continuing the legal obligation which the intestate incurred when he executed the note. *Executors of Blake* v. *Executors of Quash,* 3 *McCord* 340. The persons who made these admissions, promises and payment did not stand in such a relation to the intestate as to entitle them either to create, revive or continue an obligation of the intestate. They did not represent the intestate, and nothing that they said or did can be allowed to have the effect of fixing a debt upon the estate. They cannot be regarded as legal administrators, because the law prescribes the only mode in which such a relation can be created, and, as they have not seen fit to adopt that mode, we are unable to perceive by what authority such a position can be claimed for them. They cannot be regarded, so far as this question is concerned, as standing in any other relation to the estate than that of executors *de son tort,* and, as such, no promise, admission or payment made by them can be allowed to have the effect of creating, reviving or continuing any legal obligation binding upon the estate, and for this doctrine express authority may be found in the case of *Haselden* v. *Whitesides,* 2 *Strobh.* 353. The fact that they were heirs of the intestate cannot affect the question, for, as such, they have no more authority to create or revive a debt against their ancestor than any other person would have. The question here is whether the legal obligation *of the intestate* still subsists or has been destroyed. They may create obligations binding upon themselves and upon their interests in the estate, but we are at a loss to discover any authority by which they can fix a debt upon their ancestor or upon his estate.

For like reasons we do not think that the judgment recovered by Mrs. Stringfellow on her note against Tench and Dawkins, as executors, so called, can help the appellant. Such a judgment would not bind the estate, inasmuch as it was obtained against persons who had no authority to represent the intestate, and it

cannot have the effect of arresting the operation of the Statute of Limitations when pleaded by the lawfully appointed administrator, the legal representative of the intestate.

Next, it is contended that the administrator having invoked the aid of the Court of Equity to reach the real estate for the payment of the debts of his intestate, that court will not permit him to plead the statute to this claim, which has always been and still is acknowledged to be justly due by the heirs. The authorities cited by the appellant to sustain this position are, in our judgment, far from establishing it, and, on the contrary, we think that the true rule is, as stated in *Cumming* v. *Berry*, 1 *Rich. Eq.* 114, that a Court of Equity is bound to apply the bar of the Statute of Limitations to a *legal* demand in the same manner as a court of law would apply it. Here, the demand is undoubtedly a legal demand, and if an action were brought upon it on the law side of the court, there cannot be a doubt that the plea of the statute would prevail.

Again, it is contended that the administrator is estopped from pleading the statute by reason of the fact that he has recognized the claim in his complaint as an existing demand against the estate. The foundation of this position is that the plaintiff in his complaint alleges that the indebtedness of the estate is very large, and that he names Mrs. Stringfellow as one of the creditors of the intestate, and that, without her claim is established, the indebtedness would be small. Without stopping to inquire whether such loose allegations would amount to an admission of the debt and an implied promise to pay it, and assuming, for the present, that the administrator had in the most positive and unqualified terms admitted the validity of the claim, we still do not think that this would prevent the bar of the statute. This so-called admission, it will be observed, was made after the claim was barred, for, as we have seen, the bar was complete on November 5th, 1875, and the action was not commenced, and, of course, the complaint was not filed until January 10th, 1878. Whether this was such a positive and unqualified admission of the debt as would imply a promise to pay it, even if made by the debtor himself, might well be questioned, but, waiving that question, the point now presented is whether a promise to pay a

debt of his intestate made by an administrator, after the bar of the statute is complete, would revive the debt, or, more properly speaking, would constitute a valid cause of action against the estate; for the rule as established by the case of *Smith* v. *Caldwell*, 15 *Rich.* 373, and recognized recently in *Hayes* v. *Clinkscales*, 9 *S. C.* 450, is that a promise to pay a debt already barred by the statute constitutes a new contract and a new cause of action, the right of action upon the original obligation being absolutely gone. The question, then, is narrowed down to the inquiry whether an administrator can *create* a new debt against the estate of his intestate. To the question thus stated there can be but one answer. It is clear, therefore, that even if the administrator had in the most unqualified manner acknowledged this debt, and promised to pay it, after the bar of the statute was complete, it could not have the effect of either reviving the original debt or creating a new debt against the estate.

We are unable to see how the doctrine of estoppel applies to the case. This statement made by the administrator in the complaint cannot be said to have had the effect of inducing Mrs. Stringfellow to delay action until after the statutory period had elapsed, because, as we have seen, the bar of the statute was complete long before the complaint was filed and before such statement was made. There is no foundation, therefore, for the idea that Mrs. Stringfellow has, by this statement on the part of the administrator, been induced to alter her condition to the prejudice of her rights.

We are unable to perceive the force of the objection that the plea of the statute was interposed only by the administrator. As a matter of fact, we understand that the plea was insisted upon before the referee by some of the creditors, also. But, according to our view, this is not material, for the administrator was the proper party to set up the plea, and, indeed, according to some of the authorities, it was his duty to do so. *Bird* v. *Houze, Spears Eq.* 255. See, also, remarks of Carroll, Ch., in *Hinton* v. *Kennedy*, 3 *S. C.* 478; and see, also, the case of *Shewen* v. *Vanderhorst*, 1 *Russ. & M.* 349, 2 *Russ. & M.* 75, as stated in 2 *Wms. Ex.* 1283, in these words: "Under the common decree in an administration suit, a creditor applied to prove

a debt which was barred by lapse of time, and, the executor refusing to interfere, the plaintiff, a residuary legatee, insisted upon setting up the objection of the statute. Sir John Leach, M. R., held that it was competent for the plaintiff or any other person interested in the fund to take advantage of the statute before the master, notwithstanding the refusal of the executor, and this decision was confirmed by Lord Brougham on appeal."

The next question raised by the appeal is whether the sealed note presented by James B. Dawkins has been satisfied by his acceptance of the promissory note now held by Mrs. Stringfellow, and by his canceling and surrendering the sealed note to the intestate. The question whether one security is taken in satisfaction or as a mere substitute for another is a question of fact dependent upon the proof of the intention of the parties. If the intention is that the new security shall operate as a payment or extinguishment of the other, then such will be the effect of the transaction. Here both the referee and the Circuit judge have found the fact to be that the intention was to extinguish the larger note by the smaller, and we think their finding is fully supported by the evidence. The larger note was canceled and surrendered to the maker and remained in his possession up to the time of his death, and, in fact, should now be regarded as legally in possession of the administrator, for the return of it to the attorney of the payee by one of the family of the intestate after his death, and after this action was commenced, was altogether unwarranted and cannot be allowed to affect this question. The canceling and surrendering the note to the payee was the same in effect as if the payee had, upon the receipt of the smaller note, burnt or otherwise destroyed the larger note as a means of utterly extinguishing the debt secured by it.

The fact that the new security was a smaller amount and of inferior rank does not alter the result. The old artificial rule, which has no foundation in reason and ought not to be extended, but which has prevailed ever since *Pinnell's Case* (5 *Co.* 117), that the payment of a less sum than the whole amount due, on the day when the debt matures or afterwards, cannot be a satisfaction of the debt, applies only to a payment *in money*, and, therefore, when something other than money is accepted in

satisfaction of the debt it will be discharged, even though the value of the thing so accepted should be far less than the amount of the debt. Here the thing received in satisfaction of the debt was not money, and the rule does not apply, but the effect of the transaction must be determined by the intention of the parties.

So, too, the fact that the note received in satisfaction was a promissory note, and, therefore, inferior in rank, cannot affect the result. In *Peters* v. *Barnhill,* 1 *Hill* 236, a sealed note was allowed to operate as payment of a judgment. In *Dogan* v. *Ashbey,* 1 *Rich.* 36, a promissory note was held to be payment of a judgment. In *Mayer* v. *Mordecai,* 1 *S. C.* 398, confederate treasury notes, which were never *money* in any legal sense, but simply promises to pay, having been accepted, even by a trustee, in payment of a bond secured by a mortgage, by the legal owner of the bond, it was held that the bond was extinguished and the mortgage satisfied. So in numerous cases of a like character the same doctrine was held. It is clear, therefore, that there was no error on the part of the Circuit judge in holding that the sealed note to James B. Dawkins was extinguished by his acceptance of the note now held by Mrs. Stringfellow in satisfaction thereof.

It is also urged by the appellants that the claim in favor of Choice against the estate of J. P. Dawkins, assigned to Mowry & Son, is embraced in the mortgage debt held by them, and that any payment made on the Choice debt out of the assets of the estate should operate as a payment on the said bond and mortgage, and that the Circuit judge erred in not so ordering. We do not understand that anything is adjudged upon this point by the Circuit decree, as there was no exception to the referee's report bringing the question before the Circuit judge. All that is there adjudged is that the proceeds of the sales of the real estate shall be applied : 1. To the costs of the case. 2. To the debts of the intestate, as ascertained and allowed by the referee, amongst which is the Choice claim assigned to Mowry & Son. 3. To the mortgage debt due to Mowry & Son. 4. That the residue, if any, be held by the clerk until the further order of the court. If, therefore, it be true, as alleged by appellants, that the amount due on the mortgage debt to Mowry & Son has

never been judicially ascertained, that, of course, will have to be done before the Circuit decree can be fully carried out, and in doing this the appellants may then raise the question whether the amount applied to the Choice debt, now held by Mowry & Son, out of the assets of the intestate, should operate as a payment *pro tanto* on the mortgage debt to Mowry & Son.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and MCGOWAN, A. J., concurred.